

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
03/05/2015

| | | |
|---|---|---|
| IN RE: § | | |
| GUADALUPE CORDOVA JR.; aka § | CASE NO: 09-35693 | |
| CORDOVA; dba CHERRY TOP BAKERY, § | | |
| *et al* § | | |
|     Debtor(s) § | | |
| § | CHAPTER 13 | |
| § | | |
| GUADALUPE CORDOVA JR., *et al* § | | |
|     Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 13-3132 | |
| § | | |
| RODNEY UNDERWOOD, *et al* § | | |
|     Defendant(s) § | | |

### MEMORANDUM OPINION

On October 30, 2014, the Court held an evidentiary hearing on Rodney Underwood's statute of limitations defense. For the reasons discussed below, neither of the Cordovas' claims are barred by the statute of limitations.

### Facts

The Cordovas purchased a property at 808 Ammons Street, South Houston, Texas 77587 from Rodney Underwood, acting on behalf of Uplift for the Homeless, Inc. on March 30, 1994, by a contract for deed. Under the contract, the Cordovas were to make payments monthly payments of $298.78 until the $25,000.00 balance of the purchase price and accrued interest were paid in full. Upon payment of these amounts, Uplift was to deliver a warranty deed to the Cordovas. It is undisputed that Mr. Underwood cashed the checks received from the Cordovas from April 1994 until July 2004.

Beginning with the August 2004 payment, Mr. Underwood stopped cashing some of the Cordovas' checks. The Cordovas allege that they continued making payments until they repaid

the full amount due in 2006.  Mr. Underwood testified that he hasn't received a check from the Cordovas since July of 2004.

The Cordovas sold the property to Jose Luis Mata under a contract for Deed sometime in 2001 or 2002.  The sale to Mata was made subject to the Cordova-Uplift contract.

On June 29, 2006, Patricia Crawford, allegedly acting on behalf of Uplift for the Homeless, Inc. executed a General Warranty Deed from Uplift to Mr. Underwood.

On July 29, 2006, after receiving title to the property, Mr. Underwood entered into a Homestead Lien Contract and Deed of Trust with Compass Bank.  The contract granted a lien in the property to Compass Bank to secure repayment of $27,500.00 in a revolving line of credit.  On March 5, 2007, Mr. Underwood executed a Deed of Trust in favor of Washington Mutual Bank to secure repayment of an additional loan.  The Washington Mutual loan was apparently sold to Chase Home Finance, LLC.

On July 6, 2010, Chase Home Finance, L.L.C. ("Chase") issued an "Acceleration Warning (Notice of Intent to Foreclose)" stating that Mr. Underwood was in default of what was originally the Washington Mutual loan.  Chase subsequently foreclosed on the property.

On October 15, 2010, Jose Luis Mata filed a lawsuit against the Cordovas in state court.  According the Cordovas, "[n]ot until the Cordovas were sued by Jose Luis Mata did they learn that the Property had been wrongfully encumbered or that Underwood alleged that additional amounts were due under the contract for deed." (ECF No. 53 at 5).  At this time, Ms. Cordova claims that she called Mr. Underwood and that he made assurances that he would deliver the deed to her.

Beginning in 2006, Ms. Cordova began making requests for the deed.  Ms. Cordova claims that Mr. Underwood repeatedly stated that he would deliver the deed to them and made

such assurances as late as 2012. The Cordovas claim that they did not file suit or take other action against Mr. Underwood based on these representations.

Mr. Underwood disputes many of these allegations. He claims that (i) to date, he has not received full payment on the note; (ii) during every conversation, he told the Cordovas that they still owed money on the note and that he would not deliver the deed until they repaid it; (iii) prior to October of 2013, he hadn't communicated with the Cordovas since sometime between 2006 and 2008. Mr. Underwood claims that he considered the contract terminated when the Cordovas stopped making payments in 2004. However, he admitted that he did not attempt to foreclose on the property and that he did not provide the Cordovas with written notice of default until October 9, 2013.

## Statute of Limitations Defense

In their amended complaint, the Cordovas assert two claims against Mr. Underwood: (i) breach of contract; and (ii) fraud. Neither of these claims are barred by the statute of limitations.

### *Breach of Contract*

The Corvdovas' breach of contract claim is governed by the Texas four-year statute of limitations. *Addicks v. Sickel*, No. 2-03-218-CV, 2005 WL 737419, at *3 (Tex. App. Mar. 31, 2005) ("A breach of contract claim is covered by the four-year statute of limitations contained in Texas Civil Practice and Remedies Code section 16.004(a)(3) because it is an action for a debt.").

In breach of contract cases following delayed performance, the statute of limitations does not begin to run until it appears the party in default has repudiated the contract and will not perform. *Goodwin v. Southtex Land Sales, Inc.*, 243 S.W.2d 721, 726 (Tex. Civ. App. 1951); *see also Dimon v. Trendmaker, Inc.*, No. 14-96-01081-CV, 1998 WL 19861, at *7 (Tex. App. Jan.

22, 1998). Such repudiation only occurs when one party to the contract unconditionally, with words or actions, refuses to perform its obligations under the contract prior to the time when such performance is due. *Costley v. State Farm Fire & Casualty Co.*, 894 S.W.2d 380, 385 (Tex. App. Amarillo 1994).

The Cordovas claim that "[b]y failing to deliver a warranty deed to the Cordovas conveying good and indefeasible title to the Property, Uplift breached the Cordova-Uplift Contract." (ECF No. 26 at 5).

There are two significant factual disputes related to the breach of contract claim: (i) if and when the Cordovas fully repaid the balance on the note; and (ii) if and when Mr. Underwood ever communicated to the Cordovas that they still owed money on the note. The Cordovas claim that they were entitled to the deed when they repaid the note in 2006 and that Mr. Underwood acknowledged such during several conversations during the 2006 - 2012 timeframe. Mr. Underwood claims that they were never entitled to the deed because the note was never paid off and that he communicated this to the Cordovas on several occasions.

Neither of these disputes needs to be resolved to determine the statute of limitations question for the Cordovas' breach of contract claim. It is clear from Mr. Underwood's testimony that he never repudiated the contract. Although Mr. Underwood may have considered the contract cancelled, he admitted that (i) he never attempted to foreclose or otherwise exercise control of the property; and (ii) he never communicated to the Cordovas that he was terminating the contract until he provided the Cordovas with written notice of default on October 9, 2013. Indeed, Mr. Underwood testified that before October of 2013, his last conversation with Ms. Cordova was sometime between 2006 - 2008, where he allegedly told her that the deed was contingent on her repaying the note.

Mr. Underwood testified that he repeatedly told the Cordovas that he would not deliver the deed until they repaid the balance on the note. This testimony contradicts his statement that he considered the contract terminated when the Cordovas stopped making payments in 2004. Mr. Underwood's promise to deliver the deed once the Cordovas paid the balance suggests that he considered the contract to be valid and enforceable. Mr. Underwood did not repudiate the contract until he sent the written notice of default on October 9, 2013. On that date, the statute of limitations on the Cordovas' breach of contract claim began to run. Accordingly, Mr. Underwood's statute of limitations defense fails as to the breach of contract claim.

*Fraud*

The Texas four-year statute of limitations also applies to the Cordovas' fraud claim. Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(4). "An action for fraud accrues upon the perpetration of the fraud, or if the fraud is concealed, when it is discovered or, through the exercise of reasonable diligence, should have been discovered." *Woods v. William M. Mercer, Inc.*, 769 S.W.2d 515, 517 (Tex. 1988); *Pooley v. Seal*, 802 S.W.2d 390, 393 (Tex. App.—Corpus Christi 1990, writ denied).

The Cordovas allege that "Uplift and Mr. Underwood represented to the Cordovas that Uplift would deliver a warranty deed to the Property to the Cordovas after the Cordovas had made all payments required under the Cordova-Uplift Contract." (ECF No. 26 at 5).

There are several disputes regarding the timing, frequency, and content of conversations between Mr. Underwood and Ms. Cordova. The Court finds that Ms. Cordova's testimony was far more credible than Mr. Underwood's testimony. Mr. Underwood testified that (i) he didn't remember whether he informed the Cordovas about the loans he took out on the property; (ii) he stated that he never attempted to foreclose on the property or otherwise exercise control over it

because he was too busy with other matters; and (iii) that prior to October of 2013, he could not recall exactly when he communicated with the Cordovas but believed it was sometime between 2006 and 2008.

Ms. Cordova testified that she and Mr. Underwood had numerous conversations during the 2004 - 2012 timeframe. She recalled specific conversations they had in October of 2010 and October of 2012. The Court credits Ms. Cordova's testimony regarding the timing of these conversations.

Whether Mr. Underwood's promise to deliver the deed was conditioned on payment of the note is of no consequence. Even if Mr. Underwood informed the Cordovas that there was a balance due and that he would not deliver the deed until it was paid, there is substantial evidence to support the Cordovas' claim that Mr. Underwood's representations were fraudulent statements designed to conceal the status of the property and prevent them from taking legal action. Mr. Underwood testified that he considered the contract terminated in 2004. In 2006, the property was transferred from Uplift to Mr. Underwood, and he subsequently took out two loans on the property. In 2010, he defaulted on one of the loans and Chase foreclosed on the property. Yet throughout this process, up until October of 2012, Mr. Underwood repeatedly promised to deliver the deed to the Cordovas.

The statute of limitations began to run no earlier than October 15, 2010. On that date, Mata filed a lawsuit against the Cordovas. Ms. Cordova testified that this is when the Cordovas first learned that Mr. Underwood had encumbered the property and that the bank had foreclosed on the property. At this time, Mr. Underwood's alleged fraudulent conduct should have been discovered by the Cordovas.

Because the Cordovas' lawsuit was filed within four years of October 15, 2010, Mr. Underwood's statute of limitation defense fails as to the Cordovas' fraud claim.

## Conclusion

The Court will conduct a trial on the merits on April 7, 2015 at 1:30 pm.

SIGNED **March 5, 2015.**

                                            Marvin Isgur
                          UNITED STATES BANKRUPTCY JUDGE